UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PATTY R. TURNER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:18-CV-607-RLW ) |
| ANDREW SAUL, COMMISSIONER OF SOCIAL SECURITY, | ) ) ) ) ) |
| Defendant.[1] | ) ) ) |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying the application of Patty Turner ("Turner") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.

**I. Background**

On June 2, 2014, Turner filed an application for SSI, alleging disability beginning on May 2, 2013. (Tr. 18, 213-27, 254-55). Turner alleged she became disabled because of a torn tendon in her left ankle, Graves' disease, muscle spasms, chronic obstructive pulmonary disease ("COPD"), depression, and anxiety attacks. (Tr. 254-55). Turner's claim was initially denied on July 24, 2014. (Tr. 125). Turner's request for a hearing was granted and hearings before an

---

[1] Andrew Saul is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul should be substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g)

Administrative Law Judge (ALJ) were held on March 10, 2016 and November 10, 2016. (Tr. 41-102; 132-33).[2] The ALJ issued a written decision on March 24, 2017, upholding the denial of benefits. (Tr. 18-33). The Appeals Council of the Social Security Administration denied Turner's request for review of the ALJ's decision (Tr. 1-3). The decision of the ALJ thus stands as the final decision of the Commissioner. *See Sims v. Apfel*, 530 U.S. 103, 107 (2000).

Turner filed this appeal on April 16, 2018. (ECF No. 1). On July 27, 2018, Turner filed a Brief in Support of her Complaint. (ECF No. 10). The Commissioner filed a Brief in Support of the Answer on November 1, 2018. (ECF No. 19). Turner filed a Reply to Defendant's Brief in Support of the Answer on November 12, 2018. (ECF No. 20). The Commissioner filed a Sur-Reply to Plaintiff's Reply to Defendant's Brief in Support of the Answer on December 7, 2018. (ECF No. 26).

## II. Decision of the ALJ

The ALJ found that Turner had the following severe impairments: posttraumatic stress disorder ("PTSD"), depression, substance abuse (marijuana), obesity, Graves' disease, and hyperthyroidism. (Tr. 20). The ALJ, however, determined that Turner did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 21). The ALJ found that Turner had the residual functional capacity ("RFC") to perform medium work, except simple, routine and repetitive tasks; occasional interaction with supervisors, coworkers and the general public. The ALJ further found that Turner was capable of tolerating routine workplace changes. (Tr. 22). In sum, the ALJ determined that Hill was not disabled. (Tr. 33).

---

[2] The second hearing was to allow counsel for Turner's counsel to examine Vocational Expert ("VE") Dolores Gonzalez.

## III. Legal Standard

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities ... ." *Id.* "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); Part 404, Subpart P, Appendix 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent claimant from doing past relevant work.[3] 20 C.F.R. §§ 416.920(e), 404.1520(e). At this step, the burden rests with the claimant to establish his RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008); *see also Eichelberger*, 390 F.3d at 590-91; *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f). If it is found that the claimant can still perform past relevant work, the claimant will not be found to be disabled. *Id.*; 20 C.F.R. § 416.920(a)(4)(iv). If the claimant cannot perform past relevant work, the analysis proceeds to Step 5.

At the fifth and last step, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work. 20 C.F.R. § 416.920(a)(4)(v). If it is found that the claimant cannot make an adjustment to other work, the claimant will be found to be disabled. *Id.*; *see also* 20 C.F.R. § 416.920(g). At this step, the Commissioner bears the burden to "prove, first that the claimant retains the RFC to perform other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to perform." *Goff*, 421 F.3d at 790; *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000). The Commissioner must prove this by substantial evidence. *Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir. 1983).

---

[3] "Past relevant work is work that [the claimant] has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn how to do it." *Mueller v. Astrue*, 561 F.3d 837, 841 (8th Cir. 2009) (citing 20 C.F.R. § 404.1560(b)(1)).

4

If the claimant satisfies all of the criteria of the five-step sequential evaluation process, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Id.*; *see also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)).

This Court reviews the decision of the ALJ to determine whether the decision is supported by "substantial evidence" in the record as a whole. *See Smith v. Shalala*, 31 F.3d 715, 717 (8th Cir. 1994). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Therefore, even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the ALJ's decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). In *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

As such, "[the reviewing court] may not reverse merely because substantial evidence exists for the opposite decision." *Lacroix v. Barnhart*, 465 F.3d 881, 885 (8th Cir. 2006) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)). Similarly, the ALJ decision may not be reversed because the reviewing court would have decided the case differently. *Krogmeier*, 294 F.3d at 1022.

### IV. Discussion[4]

---

[4] The parties make solely legal arguments and, therefore, the Court does not include a factual recitation of Turner's medical record.

## A. The Vocational Expert's Job Incidence Data Opinion

The ALJ submitted written interrogatories to VE Gonzalez. (Tr. 316-25). The ALJ asked if any jobs could be performed by a hypothetical claimant who had the same RFC and vocational experience as Turner. (Tr. 72-74). Ms. Gonzalez responded that this hypothetical individual could perform jobs as a cleaner II, lab equipment cleaner, and machine feeder. (Tr. 330). The vocational expert further responded that there were 5,826 cleaner II jobs, 51,110 lab equipment cleaner jobs, and 6,626 machine feeder jobs. (Tr. 330). The ALJ held a supplemental hearing to allow Turner's counsel to question VE Gonzalez regarding her findings. (Tr. 77-102, 337-58). The ALJ overruled Turner's objections to VE Gonzalez's findings. (Tr. 87-101).

Turner argues that the ALJ erred in adopting VE Gonzalez's job incidence data opinion. (ECF No. 10 at 7). Turner contends that VE Gonzalez obtained her job incidence data from a software program sold by SkillTRAN, but that the ALJ analyzed VE Gonzalez's opinions as if they were based on a variety of other sources (e.g., the Department of Labor, the Bureau of Labor Statistics, the VE's experience). (ECF No. 20 at 1-2). Turner maintains that SkillTRAN "publishes the software program JobBrowser" which is "the opinions and novel methodologies of one [vocational expert]—Jeff Truthan." (ECF No. 10 at 11 (citing https://skilltran.com/index.php/home/about)). Turner asserts that Truthan does not "stand behind" the job incidence data in JobBrowser "as anything other than a starting point for further expert analysis." (ECF No. 10). Turner states that the JobBrowser figures are the opinion of Mr. Truthan—not data from a governmental agency—and not intended to be used at a hearing by a VE. (TECF No. 20 at 2). Turner maintains that the SkillTRAN job incidence data is not reliable and the ALJ's reliance on VE Gonzalez's testimony regarding such job incidence data was in error and requires reversal. (ECF No. 10 at 11-12).

6

Here, VE Gonzalez testified that SkillTRAN refers to the Standard Occupational Classification ("SOC") codes, which in turn refer to the Dictionary of Occupational Title ("DOT") codes. Gonzalez indicated SkillTRAN had a methodology to extrapolate jobs by DOT code from the SOC codes. (Tr. 91-93). Gonzalez also testified that SkillTRAN is an acceptable method in the industry of providing job numbers by DOT code. (Tr. 88-89, 93). Specifically, VE Gonzalez testified that she relies on SkillTRAN, Merit, and the Bureau of Labor Statistics to come up with the jobs available by DOT code. (Tr. 94). VE Gonzalez stated that she did not adjust the numbers from SkillTRAN in this case (as she may in other cases) because the job data numbers were "fine" and represented relevant figures. (Tr. 93-95).

The Court agrees with the ALJ's decision to overrule Turner's objections to VE Gonzalez's testimony. (Tr. 33, 87-101). The ALJ observed that VE Gonzalez had proper training and qualifications to testify as a vocational expert, given she had a degree in Vocational Rehabilitation Counseling and over three decades of professional experience as a vocational consultant. (Tr. 32, 89, 316-18). The ALJ further noted that the Social Security Agency uses vocational experts to resolve complex vocational issues, "specifically the number of jobs available in the national economy based on the limitations provided in the [RFC]." (Tr. 32, 89). The ALJ addressed Turner's criticisms, stating that VE Gonzalez testified she relied on statistics produced "from an outside source [SkillTRAN], the United States Department of Labor, Bureau of Labor Statistics." (Tr. 32). As indicated, VE Gonzalez explained that using SkillTRAN to obtain job incidence data by DOT code was an accepted method in the industry. (Tr. 88-89, 93). Turner has provided nothing to rebut this position. *See* Tr. 88, 94 (Plaintiff's counsel at the hearing admitted she did not know SkillTRAN's methodology). Turner now attempts to discredit VE Gonzalez and her limited reliance on SkillTRAN based upon various materials that were not part of the

administrative record before the ALJ. *See* ECF No. 10 at 2; ECF No. 20 at 2-3 (discussing various statements by SkillTRAN's creator Jeff Truthan). Because these materials were not before the ALJ, the Court cannot consider them now. Moreover, even if the Court were to consider these materials, the Court holds the ALJ relied upon the testimony of VE Gonzalez, who properly based her opinions on information she obtained from SkillTRAN using her 43 years of experience. Therefore, the Court holds that the ALJ properly received job incidence data from VE Gonzelez, which he incorporated into his finding that jobs existed in the national economy that Turner could perform. The Court holds that the ALJ's opinion was based upon substantial evidence and affirms his finding that Turner was not disabled.

### B. ALJ Richard Hopkins properly received evidence at Turner's administrative hearing and issued his decision

Turner raises a challenge under the Appointments Clause,[5] claiming that Richard Hopkins was not properly appointed as an Administrative Law Judge (ALJ). Turner cites to an article indicating that the Solicitor General issued a memorandum finding that all Social Security ALJs are inferior officers rather than employees. (ECF No. 10 at 13 (citing https://www.reuters.com/article/us-otc-dojmemo/in-confidential-memo-to-agency-gcs-doj-signals-aggressive-stand-on-firing-aljs-idUSKBN1KD2BB)). Turner further cites to *Lucia v. Securities and Exchange Commission*, 138 S. Ct. 2044 (2018) to support this position. In *Lucia*,

---

[5] The Appointments Clause is part of Article II, Section 2, Clause 2 of the United States Constitution, which empowers the President of the United States to nominate and, with the advice and consent (confirmation) of the United States Senate, appoint public officials. *See* https://www.law.cornell.edu/constitution/articleii ("[H]e shall nominate, and by and with the advice and consent of the Senate, shall appoint ambassadors, other public ministers and consuls, judges of the Supreme Court, and all other officers of the United States, whose appointments are not herein otherwise provided for, and which shall be established by law: but the Congress may by law vest the appointment of such inferior officers, as they think proper, in the President alone, in the courts of law, or in the heads of departments.").

8

the Supreme Court held that ALJs of the Securities and Exchange Commission ("SEC") are "Officers of the United States" within the meaning of the Appointments Clause, meaning that the President, a court of law or department head must appoint them. *Lucia*, 138 S. Ct. at 2055. Turner argues ALJs in the Social Security Administration are similar "inferior officers" and have not been properly appointed. (ECF No. 10 at 13). Turner further claims that her challenge is timely even though she first raises this argument before this Court and did not address it during her administrative hearing. (ECF No. 10 at 13). Turner states that the Commissioner "concealed all relevant facts that could have allowed Turner to present an objection regarding the appointment of Richard Hopkins as an ALJ, and Turner learned of the constitutionally defective appointment for the first time on July 23, 2018 through the Reuter's media report publishing the Solicitor General's memorandum." (ECF No. 10 at 13).

The Court, however, disagrees with Turner's interpretation of *Lucia*. "*Lucia* made it clear that, with regard to Appointments Clause challenges, only 'one who makes a timely challenge' is entitled to relief." *Murphy v. Saul*, No. 18-CV-2037-CJW-KEM, 2019 WL 3502912, at *8 (N.D. Iowa Aug. 1, 2019) (quoting *Lucia*, 138 S. Ct. at 2055). In *Lucia*, the Supreme Court found the appellant's challenge timely when the appellant challenged the validity of the ALJ's appointment before the SEC, and continued to pursue the challenge before the appellate court and the United States Supreme Court. *Id.* Here, the Court notes that by the time Turner received her final agency decision on March 24, 2017, there was already a split of authority in two Courts of Appeals on the issue of whether the appointments of ALJs were constitutional. *See Bandimere v. Sec. & Exch. Comm'n*, 844 F.3d 1168, 1172 (10th Cir. 2016); *Lucia v. Sec. & Exch. Comm'n*, 832 F.3d 277, 280 (D.C. Cir. 2016). The Court holds that Turner must have raised the issue before the ALJ's decision became final. *Lucia* makes it clear that this particular issue must be raised at the administrative

9

level. "Because claimant did not raise an Appointments Clause issue before or during the ALJ's hearing, or at any time before the ALJ's decision became final, the Court finds that claimant has forfeited the issue for consideration on judicial review." *Murphy*, 2019 WL 3502912, at *8; *Leiva v. Berryhill*, No. 8:18CV461, 2019 WL 3325340, at *8 (D. Neb. July 24, 2019); *Millard v. Berryhill*, No. 8:18CV452, 2019 WL 2502876, at *8 (D. Neb. June 17, 2019) (considering and rejecting nearly identical Appointments Clause arguments and denying the claimant's request for relief as untimely).

**V.      Conclusion**

Based on the foregoing, the Court finds that the ALJ's decision was based on substantial evidence in the record as a whole and should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that this action is **AFFIRMED**. A separate Judgment will accompany this Order.

Dated this 6th day of September, 2019.

*Ronnie L. White*
RONNIE L. WHITE
UNITED STATES DISTRICT JUDGE